IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ELAINE ROPER,

            Plaintiff,

v.

MICHAEL J. ASTRUE,

            Defendant.

Civil No. 09-1447-TC

**FINDINGS AND RECOMMENDATION**

COFFIN, Magistrate Judge:

      Plaintiff Elaine Roper ("Roper") seeks judicial review of the Social Security Commissioner's final decision partially denying her application Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). For the

1 - FINDINGS AND RECOMMENDATION

reasons that follow, the Commissioner's decision should be reversed and remanded for further proceedings.

## BACKGROUND

Born in 1959 (Tr. 55)[1], Roper reports two years of college education. Tr. 94. She applied for SSI on December 26, 2000, alleging disability since November 15, 2000 (Tr. 55-57), due to blurred double vision in her left eye. Tr. 88.

This case has a long procedural history. The Commissioner denied Roper's SSI application initially and upon reconsideration (Tr. 29-41), and an Administrative Law Judge ("ALJ") held a hearing on May 7, 2002. Tr. 362-404. The ALJ found Roper not disabled on May 30, 2002. Tr. 21. Roper appealed that decision, and the Appeals Council subsequently remanded the matter back to the ALJ. Tr. 21. A second hearing was held on February 26, 2002, and the ALJ again found Roper not disabled on September 24, 2004. Tr. 21-28.

Roper appealed that decision to this court, and this court remanded the matter for further proceedings. Roper v. Barnhart, No. 05-669 (D. Or. June 28, 2006); Tr. 463-79. An ALJ held a third hearing on July 18, 2007(Tr. 741-69), and again found Roper not disabled on November 30, 2007. Tr. 453-61. Roper again appeals and the Commissioner moves to remand the matter for further proceedings. Docket # 34.

//

//

//

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed by the Commissioner on July 1, 2010 (Docket #11).

2 - FINDINGS AND RECOMMENDATION

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. Id.

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. §416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v); Yuckert, 482 U.S. at 141-2; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.966; 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found Roper's "left eye blindness from myopic macular degeneration," mild dysthymia, and mild anxiety disorder with agoraphobia "severe" at step two in the sequential proceedings. Tr. 456. The ALJ found that these impairments did not meet or equal a disorder listed in the Commissioner's regulations at step three in the sequential proceedings, and assessed Roper's RFC:

> [The] claimant can perform work activities without any exertional restrictions. Non-exertionally, the claimant is restricted to work which does not require fine depth perception, near acuity, far acuity, close perception, clear vision, or would be done in constant bright light. Her residual functional capacity also includes mild limitation on the ability to make judgments on complex work-related decisions; interact appropriately with the public, or coworker; and in responding appropriately to usual work situations and changes in a routine work setting. Tr. 458.

The ALJ found that this RFC did not allow Roper to perform her past relevant work at step four in the sequential proceedings, but allowed her to perform work in the national economy at step five. Tr. 461. The ALJ therefore found Roper not disabled.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006), see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id., see also Batson, 359 F.3d at 1193.

## DISCUSSION

### I.    District Court Remand Order

This court's June 28, 2006, decision ordered the ALJ to "develop the record," and to "follow the regulations and pertinent case law in his analysis of Roper's mental impairments and evaluation of Roper's credibility." Tr. 479. The Appeals Council subsequently remanded the case to the ALJ for "further proceedings consistent with the order of the court." Tr. 482.

Roper contends that the ALJ failed to follow this court's June 28, 2006, remand order regarding the ALJ's analysis of her mental impairments. Pl.'s Opening Br. 13-14. The Commissioner now moves to remand the matter for further proceedings (Docket # 34) so that the ALJ may obtain further records from primary care treating physician Julia Becher, M.D., if available, and "further evaluate Plaintiff's RFC with specific findings for each of the functional areas in 20 C.F.R. §416.920a." Def.'s Br. 4.

## A. Development of the Record

The Commissioner does not explain why further development of the record is necessary. Id. The record before this court shows that Dr. Becher treated Roper on three occasions at Northwest Primary Care Clinic between May 2, 2006, and August 22, 2006. Tr. 617-49. During this time Dr. Becker described Roper's prescribed weight loss and diabetes treatment, and ordered blood tests. Id. No entry suggests these records are incomplete, or that further evidence exists regarding Dr. Becher's treatment of Roper's alleged mental impairment between Roper's November 15, 2000, alleged onset date and the ALJ's November 20, 2007, decision. Further, a party cannot seek to develop the post-hearing record merely to obtain more favorable evidence. See Clem v. Sullivan, 894 F.2d 332, 338 (9th Cir. 1990) (citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985)) (finding that a party does not establish good cause for failing to submit evidence prior to a hearing simply by obtaining a more favorable expert witness report). The Commissioner's suggestion that these records warrant development should therefore be rejected.

//

//

### B.       Further Analysis Under 20 C.F.R. § 416.920a

The Commissioner also asserts that the ALJ should be given another opportunity to assess Roper's mental impairments under the technique instructed by 20 C.F.R. § 416.920a. Def.'s Br. 4. The ALJ has a duty to provide a narrative rationale related to these findings, and to specifically discuss the Commissioner's Psychiatric Review Technique Form ("PRTF"). Keyser v. Astrue, 648 F.3d 721, 725 (9th Cir. 2011). Failure to include such rationale requires reversal by the reviewing court. Id. The ALJ presently presented no such narrative, and this omission cannot be sustained.

In summary, the ALJ clearly failed to follow this court's remand order regarding his analysis of Roper's mental impairments. An ALJ's failure to follow a District Court's remand order is reversible error. Sullivan v. Hudson, 490 U.S. 877, 885-86 (1989). The effect of this error is discussed below. Infra, 15-16.

## II.      Credibility

Roper asserts that the ALJ's credibility analysis erroneously addressed Roper's unemployment benefit application and non-compliance with treatment. Pl.'s Opening Br. 15, 18-17. The Commissioner asserts that the ALJ "cited appropriate reasons supporting his credibility determination," Def.'s Br. 5, and subsequently states that "despite the errors in the ALJ's decision, the ALJ did cite clear and convincing reasons for doubting disability . . . ." Def.'s Br. 6. The Commissioner concurrently cites the ALJ's findings regarding Roper's activities of daily living. Def.'s Br. 6. This submission does not answer Roper's assertions of error.

//

//

### A. Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036, (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Id. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2005).

### B. Unemployment Benefits Application

The Commissioner's regulations instruct that a claimant must apply for all "other benefits" for which she is eligible in order to be eligible for SSI payments. 20 C.F.R. § 416.210. Such benefits specifically included "unemployment benefits." 20 C.F.R. § 416.210(b). Receipt

8 - FINDINGS AND RECOMMENDATION

of unemployment benefits may undermine a claimant's alleged inability to work full time. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (citing Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988)). This is because unemployment benefit applications may require that a claimant hold herself out as available for full time work. Copeland, 861 F.2d at 542.

Roper asserts that she should not be faulted for following the Commissioner's regulatory instructions. Pl.'s Opening Br. 15-16. She specifically argues that Oregon law allows receipt of unemployment benefits if an individual is able to perform "some" work, which is consistent with the Social Security Administration's definition of disability based upon an individual's inability to perform full time work. Id. at 15. Roper also cites an internal memorandum circulated within the Social Security Administration in support of her argument. Id. at 15-16. The Commissioner does not answer this argument.

The record before this court does not establish that Roper held herself out for full time work in her application for unemployment benefits. In such circumstances, the reviewing court cannot determine that the claimant made such an assertion, and an ALJ's inference on the matter does not constitute a clear and convincing reason for discrediting a claimant. Carmickle, 533 F.3d at 1162. The ALJ's finding on the matter therefore should not be affirmed.

### C. Failure to Follow Treatment

Roper asserts that the ALJ erroneously found her non-compliant with treatment, but does not point to the ALJ's finding. Pl.'s Opening Br. 18-19. The ALJ found:

> She is blind in her left eye and has photosensitivity, yet, she chooses not to even try wearing sun glass shades or prescription sunglasses. The almost non-existence of care, and her non-

9 - FINDINGS AND RECOMMENDATION

> compliance with treatment recommendations when she obtained
> care, is relevant because it undermines the severity of symptoms
> she alleges. Tr. 460.

The medical record before this court does not show that Roper was advised to wear "glass shades or prescription sunglasses," nor does it show that Roper refused to do so against medical advice. The ALJ posited this recommendation himself at Roper's July 18, 2007 hearing, and Roper responded that sunglasses interfere with her already-obscured vision. Tr. 746. This exchange does not establish non-compliance with prescribed treatment under the applicable legal standards.

The ALJ subsequently provides no explanation or findings relating to Roper's alleged non-compliance with treatment. The ALJ's findings must be based upon substantial evidence, *Bray*, 554 F.3d at 1222, and this court's review of the ALJ's decision and the record finds no indication that Roper refused to comply with recommended treatment regarding her eyesight and other physical impairments. The record shows that Roper was initially hesitant in accepting the antidepressant Paxil, but later consistently took Remeron as prescribed. Tr. 223. This court previously found that Roper's hesitancy alone did not constitute substantial evidence supporting a finding that Roper refused to follow prescribed treatment throughout the period under review. Tr. 476. Such reasoning remains applicable. The ALJ's findings on this matter therefore should not be sustained.

In summary, the ALJ improperly cited Roper's application for unemployment benefits and alleged non-compliance with treatment in rejecting Roper's symptom testimony. The

Commissioner does not defend the ALJ's remaining credibility analysis, and the ALJ's credibility analysis should not be sustained.

## III. Medical Source Statements

Roper also contends that the ALJ improperly evaluated the medical record pertaining to her Nissen fundoplication[2] operation, and the opinion of examining psychologist Richard Kolbell, Ph.D. Pl.'s Opening Br. 17. The Commissioner does not answer these claims.

### A. Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. Id. If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. Id. at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

//

//

---

[2]Nissen fundoplication surgery is a procedure used to treat gastro-esophageal reflux disease. See "Fundoplication surgery for Gastroesophageal Reflux Surgery, available at http://www.webmd.com/heartburn-gerd/fundoplication-surgery-for-gastroesophageal-reflux-disease-gerd (last visited September 26, 2011). The procedure involves surgical restructuring of the valve joining the stomach and esophagus. Id.

11 - FINDINGS AND RECOMMENDATION

**B.    Analysis**

    **1.    Nissen Fundoplication Surgical Procedure**

Roper asserts that the ALJ improperly "ignored" her June 16, 1998 Nissen fundoplication surgical procedure. Pl.'s Opening Br. 17.

The record shows that Roper received the indicated operation on June 16, 1998. Tr. 153-55. The ALJ did not discuss the surgical report, but found Roper's acid reflux disease "severe." Tr. 456. Roper's indicated citations point to a February 23, 2000 endoscopy report showing that the "fundoplication looked unwrapped," and concluding that the procedure failed. Tr. 183. This evidence is consistent with the ALJ's finding that Roper had "severe" acid reflux disease. Roper now points to no other evidence regarding the work-related effects of this impairment, or argues that consideration of it would change the ALJ's disability conclusion.

Roper instead points to a January 4, 2000, chart note stating that she has "limited" non-steroidal anti-inflammatory use due to the fundoplication procedure. Tr. 131. This submission does not establish that she is "unable to take pain medication," and Roper points to no error regarding the ALJ's findings regarding her pain medication use.

An ALJ's omission is harmless when the ALJ's decision remains legally valid despite the error. Carmickle, 533 F.3d at 1162. Roper does not argue or establish that the ALJ omitted evidence pertaining to her fundoplication procedure which would change the ALJ's RFC analysis. For these reasons, Roper fails to establish reversible error regarding the ALJ's evaluation of this procedure.

### 2. Examining Psychologist Richard Kolbell, Ph.D.

Roper also asserts that the ALJ, upon remand, failed to fully address the report submitted by examining psychologist Richard Kolbell, Ph.D. Pl.'s Opening Br. 14. The Commissioner does not address this assertion.

Dr. Kolbell assessed Roper for Disability Determination Services ("DDS")[3] on April 4, 2007. Tr. 732-36. Following a clinical interview and examination, Dr. Kolbell diagnosed dysthymia and anxiety disorder "no onset specified," with agorophobia. Tr. 735. He also assessed a rule-out alcohol abuse diagnosis based upon Roper's history and self-report. Id. Dr. Kolbell concurrently completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)," and found no limitations in Roper's ability to understand, remember, and carry out simple and complex instructions, or make judgments and simple work-related decisions. Tr. 737. He found "mild" limitations in Roper's ability to make complex work-related instructions (id.), and in Roper's ability to interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to ususal work situations and changes in a routine setting. Tr. 738.

The ALJ twice noted Dr. Kolbell's report, identified as "Ex. 19F." Tr. 456, 461. The ALJ stated that he included Dr. Kolbell's "minimal" work-related restrictions in his RFC analysis. Tr. 461. The ALJ's RFC included a "mild limitation on the ability to make judgments on complex work-related decisions; interact appropriately with the public, supervisor, or co-worker; and in responding appropriately to usual work situations and changes in a routine work

---

[3]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration. 20 C.F.R. § 416.903.

13 - FINDINGS AND RECOMMENDATION

setting." Tr. 458. This analysis reflects Dr. Kolbell's expressed limitations. Roper therefore fails to establish that the ALJ erred regarding Dr. Kolbell's opinion.

In summary, Roper's arguments pertaining to the ALJ's evaluation of the medical evidence should not be sustained.

### IV. The ALJ's Step Five Findings

Roper asserts that the improperly questioned the vocational expert at step five in the sequential proceedings. Pl.'s Opening Br. 19-20.

#### A. Step Five Standards

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. § 416.(a)(4)(v). Here the ALJ may take administrative notice of the occupational data contained in the Dictionary of Occupational Titles ("DOT"), or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. § 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations, Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

#### B. Analysis

Roper contends that her case is "unusual" because the ALJ asked the vocational expert to interpret medical evidence. Pl.'s Opening Br. 19.

The ALJ presently asked the vocational expert to consider limitations expressed by the ALJ at Roper's previous hearing, and here specifically articulated limitations regarding Roper's limited vision. Tr. 764-65. The ALJ then asked the vocational expert to read Dr. Kolbell's

14 - FINDINGS AND RECOMMENDATION

functional limitations, identified as Ex. 19F, pages six and seven. Tr. 766. As discussed above, supra, 12, this evidence addresses Roper's workplace limitations. Tr. 737-38. While the ALJ should have articulated for the record the evidence he asked Dr. Kolbell to read, the ALJ did not ask the vocational expert to make an adjudicatory finding regarding the medical evidence. Roper's submission that the ALJ improperly asked the vocational expert to evaluate medical evidence is not based upon the record and therefore should not be sustained.

Roper also contends that this court cannot now determine whether the ALJ's questions to the vocational expert were proper because "there is no way to know whether the [vocational expert's] testimony is actually consistent" with the DOT. Pl.'s Opening Br. 20. The vocational expert testified that her testimony was consistent with the DOT (Tr. 767), and additionally discussed the DOT as it pertained to her testimony. Tr. 765-66. Roper's submission on this matter is therefore not based upon the record and should not be sustained.

## V.     Remand

The court has discretion in deciding whether to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (cert. denied, 531 US 1038 (2000)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). The

reviewing court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. Id. at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett v. Barnhart, 340 F.3d 340 F.3d 871, 876 (9th Cir. 2003) (citing Bunnell, 947 F.2d at 348).

Here, the Commissioner concedes that the ALJ failed to properly evaluate Roper's mental impairments. Def.'s Br. 4. The ALJ additionally erred in assessing Roper's credibility, for the reasons articulated above. Supra, 7-10.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second prong of the credit-as-true analysis. Strauss, 635 F.3d at 1138. The Commissioner asserts that the record must be developed. Def.'s Br. 4. As discussed above, the Commissioner does not point to evidence supporting this proposition. This court finds the record sufficient pertaining to the period under review and therefore declines to order it developed.

The court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. Strauss, 635 F.3d at 1138. The medical evidence addressed by Roper, specifically her Nissen fundoplication surgical procedure and Dr. Kolbell's opinion, do not direct that the ALJ reach a different conclusion. Supra, 11-13. Regarding, Roper's testimony, she first testified that she has "pretty much no vision" in her left eye, that her right-eye vision is blurry and that she has difficulty seeing in bright light. Tr. 745. She further testified that she performs child care work, but that she "doesn't like to go outside on field trips" in the course of this work. Tr. 755. She also stated that she "likes to be close to home." Tr. 756. Finally, Roper testified that she cannot read paperwork, and has daily headaches from reading. Id. Neither the ALJ nor Roper's counsel solicited testimony from the vocational expert regarding these limitations. Tr. 764-68.

Thus, outstanding issues must be resolved before a determination that award of benefits is inappropriate. In such instances, the court remands the matter for further proceedings to address the improperly assessed evidence. Harman, 211 F.3d 1180. Upon remand, the ALJ must properly address Roper's mental impairments and her testimony. If necessary, the ALJ must then revise Roper's RFC. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Roper was not disabled under Title II of the Social Security Act, is not based upon correct legal standards and supported by substantial evidence. For the reasons above, the Commissioner's motion for remand should be granted. The

Commissioner's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the further proceedings.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

Dated this 6th day of October, 2011.

Thomas M. Coffin
United States Magistrate Judge